**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| Patricia Yak | ) | |
| | ) | |
| Plaintiff, | ) | **Civil Action No. 7:19-cv-5394** |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| BiggerPockets, L.L.C., and | ) | |
| Craig Curelop | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) | |

Plaintiff Patricia Yak ("Plaintiff Yak"), by and through her undersigned attorney, as and for her complaint against Craig Curelop ("Defendant Curelop") and BiggerPockets, L.L.C. "(Defendant BP") (collectively, "Defendants") alleges as follows.

**NATURE OF ACTION**

1.      This is an action for (1) misappropriation of trade secrets and unfair competition under New York common law, (2) unjust enrichment under New York common law, (3) conversion under New York common law (4), fraud under New York common law, and (5) breach of the implied covenant of good faith.

**PARTIES**

2.      Plaintiff Patricia Yak resides at 9 Third Avenue, Pelham, New York 10803.

3.      Upon information and belief, Defendant BiggerPockets, L.L.C. is a Delaware corporation with a principal place of business at 3344 Walnut Street, Denver, Colorado, 80204.

4.      Upon information and belief, Defendant Craig Curelop resides in Denver, Colorado.

## JURISDICTION AND VENUE

5.      This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. §1332 because the controversy is between citizens of different states and the amount in controversy exceeds $75,000.

6.      This Court has personal jurisdiction over Defendant BiggerPockets and Defendant Curelop pursuant to C.P.L.R.§ 302 because the Defendants committed a tortious act within the state of New York.

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims herein occurred in this Judicial District.

## FACTUAL BACKGROUND

8.      Defendant Curelop hired Plaintiff Yak to create a Lease Package for Connecticut real estate transactions under false pretexts. Defendant BP sold this same Lease Package on its website and provided it to its members without the consent or permission of Plaintiff Yak.

9.      These facts are detailed below.

### Defendant Curelop solicited Plaintiff Yak's services Via Case & Suit

10.      Plaintiff Yak is an attorney who provides legal services in connection with  real estate transactions in the state of Connecticut.

11.     In November 2017, Plaintiff Yak was invited to offer her real estate transaction services on "Case & Suit."

12.     According to its website, Case & Suit is a platform that offers "legal advice available online" by "specialized real estate attorneys."[1]

13.     Defendant Curelop solicited Plaintiff Yak's services immediately after she joined Case & Suit.

14.     Defendant Curelop requested that Plaintiff Yak draft a suite of Connecticut real estate-related legal agreements customarily used by landlords in connection with leasing property in Connecticut (hereinafter, the "Lease Packet").

15.     Defendant Curelop created the impression to Plaintiff Yak that that the Lease Packets was required in his business as a real estate investor who wanted to rent residential homes in Connecticut.

16.     Defendant Curelop indicated to Plaintiff Yak that he would offer repeat business to her real estate law practice.

17.     Defendant Curelop requested work that required a sophisticated and detailed legal analysis as it pertains to nuances of Connecticut real estate law that only trained specialists can appreciate. In particular, Connecticut had extensively revised its landlord/ tenant statute and other applicable statutes (i.e., bad bugs) a few months prior to this assignment.

18.     Being new to Case & Suit and anticipating repeat work, Plaintiff Yak charged Defendant Curelop a discounted flat rate of $ 975 for the Lease Packet.

---

[1] https://www.caseandsuit.com/#howitworks (last accessed May 27, 2019)

19.     Due to the amended landlord tenant laws and other related statutes in Connecticut just a few months prior, the project was far more difficult and labor intensive than Plaintiff Yak first believed. However, since she believed that Defendant Curelop would be a repeat client, she did not charge for the additional time required above her quote to Curlop on Case & Suit to complete the project.

20.     Case & Suit support introduced Plaintiff Yak and Defendant Curelop first Slack before they moved their correspondence to email. The initial discussion on Slack reveals that Defendant Curelop hired Plaintiff Yak to draft a Lease Package and made no mention that it would be resold.

21.     A copy of the slack message screenshots are included as **EXHIBIT A**, but the key points of the conversation is provided below.

<u>**November 10, 2017**</u>

Case And Suit Support, 1:37 PM:

> Hi Craig - meet Patricia an attorney licensed in Connecticut. She will able to help you with your legal project. I'll let you two discuss thanks!

Craig Curelop, 1:38 PM:

> Hey Patricia - We are looking to create a package of rock solid landlord forms that are specific to Connecticut. We have some made up for other states so no need to make from scratch. We will send you what we have from other states so you can make any tweaks such that it adheres to Connecticut law. The forms are the following:
> 1.     Rental Application
> 2.     Residential Lease
> 3.     Move in/ Move out Form
> 4.     Pet Addendum
> 5.     Lease amendment

6.      Lease Guaranty
7.      Lease Extension
Is this something you would be able to do?


Patricia Yak, 2:12 PM:

Yes, I would love to assist you with this Project.


Craig Curelop, 2:17 PM:

Great! What do you think you would charge for a project like this?


Patricia Yak, 2:42 PM:

1200


Patricia Yak, 7:50 PM:

What did you have in mind for a budget? also keep in mind that you would have templates that can be used multiple times. Let me know your thoughts.

**November 13, 2017**

Craig Curelop, 10:38 AM:

Hey Patricia - So we were thinking along the lines of $750. I'd like you to note that this would just be the start of a relationship. These forms are going to need to be maintained and updated at least once every year as the laws get amended and updated.

**November 15, 2017**

Patricia Yak, 2:12 PM:

Hi Craig - I am new to this website and somehow missed this message. I can do 750.

Craig Curelop:

Great! What's your email address? We can move the conversation over to email and I'll send the forms over to you. Then you can request the milestone in Case & Suit.

Patricia Yak,  3:05 PM:

[email address] Thank you!

**November 20, 2017**

Patricia Yak, 2:27 PM:

Hi Craig, I looked over the documents and may missed the Guaranty the first time. The other documents are somewhat more administrative, but the lease and the Guaranty require some analysis. After looking them over, I think I underbid a bit. Would you split the difference between my original estimate and yours and agree to $975?

Craig Curelop, 3:32 PM:

$975 is good.

22.     After this, Plaintiff Yak and Defendant Curelop moved their conversations off Slack.

23.     Nonetheless, the basic terms of the meeting of the minds was established. They agreed on a price and the services that Plaintiff Yak would provide.

24.     The Case & Suit website has been modified At no time did Defendant Curelop indicate on the Case & Suit website that the actual client was Defendant BP.

25.     Defendant Curelop did not indicate at this time on the Case & Suit website that he represented Defendant BP.

26.     Defendant Curelop did not indicate while Plaintiff Yak worked on the Lease Package that he represented Defendant BP.

27.     Defendant Curelop never described to Plaintiff Yak the business model of Defendant BP.

28.     Defendant Curelop never indicated to Plaintiff Yak that Defendant BP provides legal document packages to third parties.

29.     Defendant Curelop never indicated to Plaintiff Yak that Defendant BP intended to provide the Lease Package to third-parties.

30.     Defendant Curelop's omission of such important details misled Plaintiff Yak into doing work without fair and adequate compensation.


**The Follow-Up Work**

31.     In February 2019, Defendant Curelop requested that Plaintiff Yak to do follow-up work to update the initial Lease Packet and to determine whether there had been any further changes in Connecticut real estate law.

32.     For this follow-up work, Plaintiff Yak charged Defendant Curelop at her standard rate of $350/ hour and required a retainer of $1,400 as she first estimated that it would require approximately four hours of work. Her engagement letter specifically states that "[she]will

provide the legal services that, in [her] professional judgment, are appropriate for this matter and in accordance with applicable legal and ethical standards."

33.     Plaintiff Yak sent an invoice for her work and a standard attorney engagement letter (included herein as "**EXHIBIT B**" and "**EXHIBIT C**", respectively").

34.     Plaintiff Yak performed the follow-up work and timely delivered her work product to Defendant Curelop.

35.     Defendant Curelop paid the $1,400 retainer that he owed to Plaintiff Yak.

36.     A copy of the final Lease Packet is included as **EXHIBIT D**.


**Defendant BP Published Plaintiff Yak's Lease Package**

37.     According to its website[2], Defendant BP is a "Real Estate Investing Social Network" and has over 1,370,000 members.

38.     Defendant BP's website also sells  "Lease Agreements" and "Landlord Forms For Each State" as eBooks available each for $99[3].

39.     Upon information and belief, these same forms are also available to all membership levels of Defendant BP.

40.     On or around March 17, 2019, Plaintiff Yak's daughter purchased a copy of the Connecticut forms through Defendant BP's website as an eBook ("Connecticut eBook"). A copy of which is provided as **EXHIBIT E.**

41.     Defendant BP's website has since removed the Connecticut eBook, but upon information and belief, it remains available to its 1,370,000 members.

---

[2] https://www.biggerpockets.com (last accessed May 27, 2019)

[3] http://get.biggerpockets.com/forms/index/) (last accessed May 27, 2019)

42.    The Connecticut eBook is identical to Plaintiff Yak's work product, the Lease Packet, that she produced for Defendant Curelop.

43.    The Connecticut eBook fails to acknowledge that it was authored by Plaintiff Yak.

44.    Upon information and belief, Defendant Curelop provided Plaintiff Yak's work product to Defendant BP without her knowledge or consent.

45.    Defendant BP derives benefit from Plaintiff Yak's work product through direct sales of the Lease Packet individually on its website as well as inclusion as part of certain Bigger Pockets membership  packets upon payment of  membership dues.

46.    None of the revenue that Defendant BP acquired from selling Plaintiff Yak's work product has been given to Plaintiff Yak in the form of  a royalty or other renumeration.

47.    The Terms of Use for Defendant BP (Effective Date 1/30/14) even falsely misrepresents to its own internet users, members, and customers that "All Content and intellectual property rights []herein are the property of BiggerPockets or the material is included with the permission of the rights owner and is protected pursuant to applicable copyright and trademark laws."

48.    This is a blatant lie.

49.    Plaintiff Yak did not authorize, nor consent to, the publication, distribution, or sale of her Lease Packet to users, customers, and members of Defendant BP.


**Defendants committed fraud against Plaintiff Yak**

50.    Plaintiff Yak performed work for Defendant Curelop whom she believed to be a real estate investor based in Colorado who wanted to invest in Connecticut real estate.

51.     All documents and communications between Plaintiff Yak and Defendant Curelop reflected an understanding that Plaintiff Yak was hired to draft legal documents for use in connection with Defendant Curelop's real estate investments.

52.     Upon information and belief, Defendant Curelop acted as an agent for Defendant BP to fraudulently secure the Lease Packet from Plaintiff Yak.

53.     Defendant Curelop withheld the true purpose of his requests to Plaintiff Yak and never told her of his connection to Defendant BP until after she delivered the Lease Packet.

54.     Nothing in the Case & Suit procurement authorized the sale of Plaintiff Yak's work product to Defendant BP or other third-parties.

55.     In fact, the original posting on the Case & Suit website has been altered in such a way that Plaintiff Yak cannot access it now without receiving an error message. This is despite the fact that the front page of Case & Suit has a testimonial from Defendant Curelop.

56.     Nothing in the attorney engagement letter authorized the sale of Plaintiff Yak's Lease Packet would be provided to Defendant BP.

57.     Defendant Curelop never disclosed to Plaintiff Yak that her Lease Packet would be sold to third-parties.

58.     Yet, this is precisely what happened. Defendant Curelop provided Plaintiff Yak's Lease Packet to Defendant BP which sold them as the Connecticut eBook on its website.

59.     In Spring 2019, Plaintiff Yak uncovered this fraud and challenged Defendant Curelop about it.

60.     Not surprisingly, he played dumb. In an email dated March 19, 2019, he (as craig@biggerpockets.com) wrote:

Hi Patricia,

I think you are mistaken here. We are not selling any of your work as an eBook. I described to you over a Slack message through Case & Suit about a year ago that we were creating a suite of landlord forms for our users at BiggerPockets.com. We then had you update the forms about a month ago to make sure they are still in compliance with CT law. There is no eBook and nowhere do we mention you as the author. Please show us where you are seeing an eBook being sold and where we mention you as the author? If that is on the site, it is a HUGE mistake and we will take that down immediately.

Thanks,

Craig

61.     This email from Defendant Curelop is curious for a number of reasons. First, he admits that he solicited Plaintiff Yak's legal services to provide them to Defendant BP's users.

62.     Second, Defendant Curelop denies that the Connecticut eBook was available for sale on Defendant BP's website.

63.     Third, Defendant Curelop attempts to obfuscate the actual agreement that he had with Plaintiff Yak. He creates the impression that the true nature of the legal services was adequately disclosed to Plaintiff Yak.

64.     This is another blatant lie. Nothing in the Slack messages reveal that the intended client was actually Defendant BP or its users.

65.     This omission is a common theme on the part of Defendant Curelop. Defendant Curelop misconstrues the Slack messages as easily as he misled Plaintiff Yak.

66.     Nowhere did he mention that the Lease Package would be provided to Defendant BP or its users.

67.     Nowhere did the contracts between them provide any adequate royalties or other adequate compensation to Plaintiff for the sale of the eBook that she created.

68.     Defendants engaged in a fraudulently scheme to acquire Plaintiff Yak's Lease Packets by pretending to be potential repeat customers.

69.     They then made it available for sale and distribution on Defendant BP's website the while failing to attribute its authorship to Plaintiff Yak or pay her any royalties.

70.      Defendants' fraudulent scheme has deprived Plaintiff Yak of revenue and income, both in the loss of royalties, but also the work and services provided to other Connecticut landlords who as members of Defendant BP.

71.     Plaintiff Yak is entitled to restitution and royalties.


**Case & Suit is Part of Defendants' Fraud**

72.     Upon information and belief, Case & Suit is frequently used by Defendants to solicit real estate attorneys from around the country.

73.     The front page of the website contains a testimonial by Defendant Curelop, a screenshot of which is provided below.



74.     The testimonial reads:

We had a tall task at hand. We have needed the team at Case & Suit to find us high quality lawyers in every state. They are fast to respond to our needs and their customer service is excellent. I'm not exaggerating when I say, we could not have completed our project without Case & Suit."

Craig Curlop
Chief Financial Analyst
BiggerPockets

75.     The testimonial indicates that Defendant Curelop is the Chief Financial Analyst

for BiggerPockets.

76.     The testimonial reveals that Defendant Curelop has solicited real estate attorneys

on behalf of BiggerPockets in all 50 states.

76.     Upon information and belief, Defendants have committed a similar fraud across

all 50 states.

77.     Plaintiff Yak has never received any other work on Case & Suit.

78.     Case & Suit has since removed the original solicitation for work for Plaintiff Yak.

## FIRST CLAIM FOR RELIEF
**(MISAPPROPRIATION OF TRADE SECRETS AND UNFAIR COMPETITION AS TO
BOTH DEFENDANTS)**

79.      Plaintiff Yak repeats, rellages, and reiterates each and every allegation contrained

in Paragraphs "1" through "79" above as if each were fully set forth herein.

80.     Plaintiff employed cautions to protect its trade secrets from disclosure to the

greater public. This information included, but is not limited to, maintaining the privileged and

confidential nature of the Lease Packets that she creates for clients.

81.     By privity of contract, a relationship of mutual confidence existed between

Plaintiff and Defendant Curelop. Through this, Defendant Defendant Curelop was aware of the

trade secrets pertaining to Plaintiff Yak's Lease Packets.

82.     Upon information and belief, Defendant Curelop acted as an agent for Defendant BP to secure Plaintiff Yak's Lease Packets.

83.     Upon information and belief, Defendants utilized Plaintiff Yak's trade secret information and sold it as an eBook on Defendant BP's website.

84.     Upon information and belief, Defendants utilized Plaintiff Yak's trade secret information and provided it to members of Defendant BP.

85.     Plaintiff Yak never authorized, nor gave consent, to the distribution of the Lease Packets to third parties.

86.     Defendant Curelop never informed Plaintiff Yak that Defendant BP would distribute the Lease Packet to third parties.

87.     Defendants' actions took business away from Plaintiff Yak and secured the business for themselves.

88.     This wrongful act occurred as a result of Defendant Curelop's breach of his agreement with Plaintiff Yak.

89.     Upon information and belief, Defendant Curelop acted on the direction of Defendant BP.

90.     As a result of Defendants' conduct, Plaintiff Yak has suffered damages in an amount to be established at trial, but in any event no less than $200,000.

91.     Defendants' actions were fraudulent, intentional, willful, malicious, and oppressive beyond the bounds of common decency and was intended to harm Plaintiff Yak. Plaintiff is therefore entitled to recover punitive damages in the amount of $500,000.00.

## SECOND CLAIM FOR RELIEF
### (UNJUST ENRICHMENT AS TO DEFENDANT BP)

92.     Plaintiff Yak repeats, rellages, and reiterates each and every allegation contrained in Paragraphs "1" through "91" above as if each were fully set forth herein.

93.     Plaintiff Yak produced the Lease Packet for Defendant Curelop.

94.     Upon information and belief, Defendant Curelop acted as an agent for Defendant BP.

95.     Upon information and belief, Defendant Curelop provided the Lease Packet to Defendant BP.

96.     Upon information and belief, Defendants utilized Plaintiff Yak's Lease Packet and sold it as an eBook on Defendant BP's website.

97.     Upon information and belief, Defendants utilized Plaintiff Yak's Lease Packet and provided it to members of Defendant BP.

98.     Plaintiff Yak never authorized, nor gave consent, to the distribution of the Lease Packets to third parties.

99.     Defendant Curelop never informed Plaintiff Yak that Defendant BP would distribute the Lease Packet to third parties.

100.     Defendant BP never provided any royalties to Plaintiff Yak for the distribution of the Lease Packet to third parties.

101.     Defendant BP was therefore unjustly enriched at Plaintiff Yak's expense.

102.     It is against equity and good conscience to permit Defendant BO to retain any rights to monetize the Lease Packet.

103.     As a result of Defendants' conduct, Plaintiff Yak has suffered damages in an amount to be established at trial, but in any event no less than $200,000.

104.     Defendants' actions were fraudulent, intentional, willful, malicious, and oppressive beyond the bounds of common decency and was intended to harm Plaintiff Yak. Plaintiff is therefore entitled to recover punitive damages in the amount of $500,000.00.

## THIRD CLAIM FOR RELIEF
## (CONVERSION AS TO DEFENDANT BP)

105.     Plaintiff Yak repeats, rellages, and reiterates each and every allegation contrained in Paragraphs "1" through "104" above as if each were fully set forth herein.

106.     Plaintiff Yak had a possessory right and interest in the idea for the Lease Packet that she provided to Defendant Curelop.

107.     Defendant Curelop provided the Lease Packet to Defendant BP without the consent of Plaintiff Yak.

108.     Upon information and belief, Defendants utilized Plaintiff Yak's Lease Packet and sold it as an eBook on Defendant BP's website.

109.     Upon information and belief, Defendants utilized Plaintiff Yak's Lease Packet and provided it to members of Defendant BP.

110.     Defendant BP retained the royalties and revenues from these activities, and thus excluded Plaintiff Yak from revenue that is due to her.

111.     As a result of Defendants' conduct, Plaintiff Yak has suffered damages in an amount to be established at trial, but in any event no less than $200,000.

112.     Defendants' actions were fraudulent, intentional, willful, malicious, and oppressive beyond the bounds of common decency and was intended to harm Plaintiff Yak. Plaintiff is therefore entitled to recover punitive damages in the amount of $500,000.00.

## FOURTH CLAIM FOR RELIEF
## (FRAUD AS TO BOTH DEFENDANTS)

113.     Plaintiff Yak repeats, rellages, and reiterates each and every allegation contrained in Paragraphs "1" through "112" above as if each were fully set forth herein.

114.     Defendant Curelop retained Plaintiff Yak through the Case & Suit website to produce a Lease Packet.

115.     Plaintiff Yak believed that Defendant Curelop was a real estate investor in Colorado.

116.     Upon information and belief, Defendant Curelop acted as an agent for Defendant BP to secure Plaintiff Yak's Lease Packets.

117.     Defendant Curelop never informed Plaintiff Yak that Defendant BP would distribute the Lease Packet to third parties. This material omission induced Plaintiff Yak to produce the Lease Packet for Defendant Curelop.

118.     Plaintiff Yak relied on Defendant Curelop's statements, including Defendant Curelop's omission of the identity of the true client as Defendant BP.

119.     Plaintiff Yak produced the Lease Packet for Defendant Curelope based on the information that Defendant Curelop provided to her.

120.    Defendant Curelop never informed Plaintiff Yak that Defendant BP would distribute the Lease Packet to third parties.

121.    Upon information and belief, Defendant BP utilized Plaintiff Yak's Lease Packet and sold it as an eBook on Defendant BP's website.

122.    Upon information and belief, Defendants utilized Plaintiff Yak's Lease Packet and provided it to members of Defendant BP.

123.    Plaintiff Yak never authorized, nor gave consent, to the distribution of the Lease Packets to third parties.

124.    Upon information and belief, Defendant Curelop acted on the direction of Defendant BP.

125.    Because of Defendant Curelop's failure to disclose to Plaintiff Yak that the Lease Packet would be provided to third parties based on his intentional misrepresentations, Plaintiff Yak was wrongfully prevented from soliciting customers that happened to either be members of Defendant BP or purchase the Lease Packet from the Defendant BP's website.

126.    As a result of Defendants' conduct, Plaintiff Yak has suffered damages in an amount to be established at trial, but in any event no less than $200,000.

127.    Defendants' actions were fraudulent, intentional, willful, malicious, and oppressive beyond the bounds of common decency and was intended to harm Plaintiff Yak. Plaintiff is therefore entitled to recover punitive damages in the amount of $500,000.00.

**FIFTH CLAIM FOR RELIEF**
**(BREACH OF DUTIES OF GOOD FAITH AND FAIR DEALING**

### AS TO DEFENDANT CURELOP)

128.    Plaintiff Yak repeats, rellages, and reiterates each and every allegation contrained in Paragraphs "1" through "127" above as if each were fully set forth herein.

129.    By virtue of the Engagement Letter entered into by Plaintiff Yak and Defendant Curelop, Defendant Curelop was obligated to perform his duties and obligations in good faith and in a manner consistent with fair dealing and refrain from engaging in conduct detrimental to Plaintiff Yak.

130.    Defendant Curelop breached his duties of good faith and fair dealing by, inter alia, withholding critical information, specifically (1) that he would provide Plaintiff Yak's Lease Packet to Defendant BP; (2) that Defendant BP would provide the Lease Packet to third parties; and, (3) that Defenfant BP would benefit financially from the distribution of the Lease Packet to third parties.

131.  As a direct and proximate result of Defendant Curelop's breach of his duties of good faith and fair dealing, Plaintiff Yak has been massively and significantly damaged in an amount to be determined by the Court, but not less than $200,000.00 plus interests, costs, and attorneys' fees.

132.  Defendant Curelop's breach of his duties of good faith and fair dealing was fraudulent, intentional, willful, malicious, and oppressive beyond the bounds of common decency and was intended to harm Plaintiff Yak. Plaintiff is therefore entitled to recover punitive damages in the amount of $500,000.00.

**WHEREFORE**, Plaintiff Yak, respectfully requests that the Court:

A.    Enter judgment against each and every defendant on each and every cause of action numbered FIRST THROUGH FIFTH asserted herein in an amount to be determined at trial, but in no event less than $200,000.00;

B.    Award to Plaintiff Yak punitive damages in an amount to be  determined at trial, but in no event less than $ 500,000.00.

C.    Award to Plaintiff Yak all costs, expenses, disbursements, attorneys' fees, and interest associated with this matters; and

D.    Grant to Plaintiff Yak such other and further relief as this Court deems just and proper.


Dated: June 10, 2019

Respectfully submitted,

Steven R. Fairchild (SF 1994)
**Fairchild Law, LLC**
292 Powers Street, 1B
Brooklyn, NY 11211
(703) 994-0193
steve@fairchildlegal.com

*Attorney for Plaintiff Patricia Yak*