UNITED STATES DISTRICT COURT
<u>SOUTHERN DISTRICT OF NEW YORK</u>

PATRICIA YAK,

                Plaintiff,

          -against-

BIGGER POCKETS, L.L.C. and CRAIG CURELOP,

                Defendants.

No. 19-cv-5394-KMK

**REPLY IN SUPPORT OF MOTION BY
DEFENDANTS BIGGER POCKETS, L.L.C. AND CRAIG CURELOP
<u>TO DISMISS THE AMENDED COMPLAINT</u>**

BALLARD SPAHR LLP
Jay Ward Brown
Jacquelyn N. Schell
1675 Broadway, 19th Floor
New York, NY 10019-5820
T: (212) 223-0200
F: (212) 223-1942
brownjay@balladspahr.com
schellj@ballardspahr.com

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

ARGUMENT ............................................................................................................................1

I.  YAK'S CLAIM THAT DEFENDANTS ARE ACTING UNLAWFULLY HAS NO BASIS AND WOULD NOT IN ANY EVENT VOID THE CONTRACT ...............................................................................................................1

    A.  Defendants Are Not Practicing Law Without A License ........................................2

    B.  Defendants Are Not Unlawfully Sharing Fees Or Partnering With Attorneys ...................................................................................................................3

    C.  Yak's Theory Would Not Invalidate Her Contract ..................................................5

II.  THIS COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS .........................................................................................................5

III.  YAK HAS FAILED TO STATE ANY VIABLE CLAIM FOR RELIEF .........................7

CONCLUSION........................................................................................................................10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Balbuena v. IDR Realty LLC*,
    812 N.Y.S.2d 416 (2006) ................................................................................................5

*Banque Arabe Et Internationale D'Investissement v. Maryland National Bank*,
    57 F.3d 146 (2d Cir. 1995) ............................................................................................10

*Bonilla v. Rotter*,
    36 A.D.3d 534 (1st Dept. 2007) .....................................................................................4

*In re D'Emic*,
    111 A.D.3d 158 (2d Dept. 2013) ....................................................................................4

*Darby Trading Inc. v. Shell International Trading & Shipping Co.*,
    568 F. Supp. 2d 329 (S.D.N.Y. 2008) ............................................................................6

*El Gemayel v. Seaman*,
    72 N.Y.2d 701 (1988) ....................................................................................................3

*Essex Equity Holdings USA LLC v. Lehman Bros. Inc.*,
    909 N.Y.S.2d 285 (Sup. Ct. N.Y. Cty. 2010) ................................................................5

*Faiveley Transport Malmo AB v. Wabtec Corp.*,
    559 F.3d 110 (2d Cir. 2009) ...........................................................................................8

*Finance One Public Co. v. Lehman Bros. Special Financing, Inc.*,
    414 F.3d 325 (2d Cir. 2005) ...........................................................................................6

*Kulas v. Adachi*,
    No. 96 Civ. 6674 (MBM), 1997 U.S. Dist. LEXIS 6868 (S.D.N.Y. May 16,
    1997) ..............................................................................................................................6

*L.I. City Ventures v. Urban Compass, Inc.*,
    No. 18 Civ. 5853 (PGG), 2019 U.S. Dist. LEXIS 7782 (S.D.N.Y. Jan. 16,
    2019) ..............................................................................................................................8

*Leibowitz v. Cornell University*,
    584 F.3d 487 (2d Cir. 2009) ...........................................................................................9

*Licci v. Lebanese Canadian Bank, SAL*,
    673 F.3d 50 (2d Cir. 2012) .............................................................................................7

*N.Y. Cty. Lawyers' Ass'n v. Dacey*,
    28 A.D.2d 161 (1st Dep't 1967) .....................................................................................2

*N.Y. Cty. Lawyers' Ass'n v. Dacey*,
   21 N.Y.2d 694 (1967) ..................................................................................... 2, 3, 9

*Pappas v. Tzolis*,
   20 N.Y.3d 228 (2012) .............................................................................................. 9

*Patel v. Patel*,
   497 F. Supp. 2d 419 (E.D.N.Y. 2007) ..................................................................... 6

*Rodriguez v. City of N.Y.*,
   721 F. Supp. 2d 148 (E.D.N.Y. 2010) ..................................................................... 4

*Spivak v. Sachs*,
   16 N.Y.2d 163 (1965) .............................................................................................. 3

*In re SSA Bonds Antitrust Litigation*,
   No. 16 Civ. 3711 (ER), 2019 U.S. Dist. LEXIS 172939 (S.D.N.Y. Sept. 30,
   2019) ....................................................................................................................... 7

*State v. Winder*,
   42 A.D.2d 1039 (4th Dep't 1973) ........................................................................ 2, 3

*Stone v. Freeman*,
   298 N.Y. 268 (1948) ................................................................................................ 5

*Structured Capital Solutions, LLC v. Commerzbank AG*,
   177 F. Supp. 3d 816 (S.D.N.Y. 2016) ..................................................................... 8

**Statutes**

N.Y. Judiciary Law § 478 ................................................................................................ 2

N.Y. Judiciary Law § 491 ................................................................................................ 4

**Other Authorities**

N.Y. Rules of Professional Conduct ............................................................................ 4, 5

Yak fails in her Opposition to meaningfully rebut any of Defendants' arguments for dismissal of her Amended Complaint. She does not identify a statutory or constitutional basis for personal jurisdiction over either Defendant. She does not address the central flaw in her Amended Complaint—that her tort claims are thinly-veiled attempts to re-negotiate a contract under which, she acknowledges, performance is complete. Nor does she point to allegations in her Amended Complaint that satisfy the elements of any of her individual claims. Instead, Yak asserts an entirely new theory that Bigger Pockets' business model constitutes the unlicensed practice of law and, as a result, her contract to provide legal services to Bigger Pockets is invalid. But she did not plead this theory, and it is contrary to clear New York law. Despite having had three opportunities to state a claim, Yak has not established any plausible claim for relief, and her Amended Complaint should be dismissed.

## ARGUMENT

### I. YAK'S CLAIM THAT DEFENDANTS ARE ACTING UNLAWFULLY HAS NO BASIS AND WOULD NOT IN ANY EVENT VOID THE CONTRACT

In her Opposition, Yak contends that Bigger Pockets' business model constitutes the unlawful practice of law (or otherwise violates professional standards for lawyers) and that, as a result, her contract with Bigger Pockets is void. She acknowledges that the contract has been fully performed, Pl.'s Mem. of Law in Opp. to Mot. to Dismiss ("Opp.") at 10, Dkt. 23, and does not identify any illegality in that contract, yet she argues that Bigger Pockets' business model somehow invalidates her agreement with it, *id.* at 1-12.[1] These allegations are not part of Yak's original or Amended Complaint, not supported by the law or the facts as she has alleged them, and even if they were, would not invalidate her contract or salvage her claims.

---

[1] Though she refers to "Defendants" generally, Yak does not allege what role Curelop plays in Bigger Pockets' business model or explain why his role would be unlawful.

1

### A. Defendants Are Not Practicing Law Without A License

Yak's central contention is that Bigger Pockets' sale of legal forms constitutes the unlicensed practice of law. But the New York Court of Appeals rejected that contention more than fifty years ago. *N.Y. Cty. Lawyers' Ass'n v. Dacey*, 21 N.Y.2d 694, 695 (1967), *rev'g on dissent below*, 28 A.D.2d 161, 171-74 (1st Dep't 1967). The law prohibits non-lawyers from representing others in court, furnishing individualized legal advice, or holding themselves out to the public as lawyers. N.Y. Jud. Law § 478. But New York courts have consistently ruled that selling legal forms, or even a "do it yourself kit" for completing those forms, does not constitute the unlawful practice of law. *Dacey*, 21 N.Y.2d at 695; 28 A.D.2d at 171-74; *see also State v. Winder*, 42 A.D.2d 1039, 1039 (4th Dep't 1973). The offering of general guidance is permissible because "the essential element" of legal practice is "'the representation and the advising of a particular person in a particular situation.'" *Winder*, 42 A.D.2d at 1039 (quoting *Dacey*, 28 A.D.2d at 174).

In *Dacey*, the Court of Appeals reversed a determination that the author of "How to Avoid Probate!" had practiced law without a license. 21 N.Y.2d at 695. In the opinion adopted by the Court of Appeals, Justice Stevens explained that the book, which offered 55 pages of text and 310 pages of forms, did not constitute the unlawful practice of law because, "Dacey's book is sold to the public at large. There is no personal contact or relationship with a particular individual, nor does there exist that relation of confidence and trust so necessary to the status of attorney and client." 28 A.D.2d at 172-75. Similarly, in *Winder*, the Fourth Department ruled that a non-lawyer's publication of "The Divorce Yourself Kit," which offered forms and instructions on matrimonial court procedures, was not the unlicensed practice of law, because the book "does not purport to give personal advice on a specific problem peculiar to a designated or

readily identified person." 42 A.D.2d at 1039 (reversing injunction against sale of book).[2]

Factually, as Yak herself describes it, Bigger Pockets' business model—selling general legal forms to the public—is exactly in line with *Dacey* and *Winder*. *See* Opp. at 2 (asserting that Defendants purchased lease packets for various states, which "are available to Defendant Bigger Pockets' members and for purchase by third parties on their website"). Although Yak argues conclusorily that Defendants hold themselves out as lawyers, she contradicts her own argument by affirmatively quoting Defendants' clear public disclaimer: "The Documents are not a substitute for legal or professional advice….You should consult with an attorney or appropriate professional advisor licensed in the relevant jurisdiction…." Opp. at 7. Similarly, Yak quotes reviews from Bigger Pockets' customers, but these, too, only demonstrate that Defendants are providing general, state-specific forms, *not* individualized legal services. *See* Opp. at 5-7.

At bottom, Yak has not alleged any facts in the Amended Complaint or identified any in her Opposition that plausibly suggest Defendants engaged in conduct that would constitute the unlicensed practice of law. *Dacey*, 28 A.D.2d at 174. The only conduct by Defendants that Yak alleges is the sale of general legal forms, which is clearly permitted by New York law. *Id.*

### B. Defendants Are Not Unlawfully Sharing Fees Or Partnering With Attorneys

Yak also claims that her contract with Bigger Pockets should be invalidated as an unlawful fee-sharing arrangement between lawyers and non-lawyers. Opp. at 10 (arguing that

---

[2] Ignoring this controlling authority, Yak cites two factually inapposite cases, neither of which involved the sale of general legal forms. Opp. at 3. *Spivak v. Sachs* involved an out-of-state lawyer providing specific legal advice to a New York resident on a New York matter. 16 N.Y.2d 163, 163-65 (1965) (California attorney meeting with, advising, and revising agreements on behalf of specific New York client was unlicensed practice of law). *El Gemayel v. Seaman* dealt with the ability of a foreign lawyer to advise New York residents on foreign law. 72 N.Y.2d 701, 706 (1988) (rejecting attempt to invalidate contract as requiring unlicensed practice of law based on Lebanese lawyer's "incidental and innocuous" contacts with New York).

Defendants are receiving unlawful compensation for her legal services). Yak misunderstands the law, which prohibits non-lawyers from entering into fee arrangements based on referral agreements with lawyers:

> It shall be unlawful for any person … to divide with or receive from, or to agree to divide with or receive from, any attorney-at-law or group of attorneys-at-law … any portion of any fee or compensation, charged or received by such attorney-at-law … as an inducement for placing, or in consideration of having placed, in the hands of such attorney-at-law, or in the hands of another person, a claim or demand of any kind for the purpose of collecting such claim...

N.Y. Jud. Law § 491; *see* N.Y. Rules of Prof'l Conduct [22 NYCRR 1200.0] 5.4 (prohibiting fee-sharing between lawyers and non-lawyers) & 5.8 (limiting circumstances in which lawyers may contract with non-lawyers to offer legal services "on a systematic and continuing basis"). These rules do not prohibit contracts between lawyers and non-lawyers; rather, the "prohibition against fee-splitting . . . is 'intended to bar any financial arrangement in which a nonlawyer's profit or loss is directly related to the success of a lawyer's legal business.'" *Rodriguez v. City of N.Y.*, 721 F. Supp. 2d 148, 153 (E.D.N.Y. 2010) (citation omitted). The cases cited by Yak, Opp. at 10, 16-17, involve such referral or fee-sharing situations between lawyers and non-lawyers. *See In re D'Emic*, 111 A.D.3d 158, 161 (2d Dept. 2013) (affirming disbarment of attorney who allowed non-lawyer to perform legal work on real estate deals and share legal fees); *Bonilla v. Rotter*, 36 A.D.3d 534, 535 (1st Dept. 2007) (invalidating agreement under which non-lawyer recruited clients for lawyer, who shared resulting legal fees).

   Here, however, there are no allegations that Defendants were referring clients to, splitting fees with, or jointly providing legal services with Yak. To the contrary, Yak's primary objection is that Defendants are *not* sharing their profits with her and are providing legal forms to Bigger Pockets' members, rather than referring those members as potential clients. Am. Compl. ¶¶ 134, 151; Opp. at 10. At bottom, Yak describes her contract with Bigger Pockets as "compensate[ion]

4

for rendering legal services," Opp. at 10, and she has not identified anything impermissible about that agreement.[3]

### C. Yak's Theory Would Not Invalidate Her Contract

Even if there otherwise were any merit to Yak's theory (there is not), it still would not provide a basis for the relief she seeks here. For a contract to be void for illegality, the illegality must be in the contract itself. *See Balbuena v. IDR Realty LLC*, 812 N.Y.S.2d 416, 429 (2006) ("Although recoveries have been denied to parties who have engaged in illegal activities, in those cases it was the work being performed that was outlawed"). Nothing in Yak's theory suggests that Yak's agreement with Bigger Pockets was itself illegal. Yak "was compensated for rendering legal services to Defendant Bigger Pockets;" she alleges no illegality in that deal; and, indeed, she claims she was unaware of Bigger Pockets' intended use. Opp. at 10; Am. Compl. ¶¶ 28-29. Even if a court were to find the contract unlawful, the remedy would not be to award Yak the money she seeks, Am. Compl. ¶ 135, but to "leave [the parties] where their own acts have placed them." *Stone v. Freeman*, 298 N.Y. 268, 271 (1948) (citation omitted).

## II. THIS COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS

Yak does not dispute the evidence proffered by Defendants regarding their lack of contacts with New York or the absence of general jurisdiction over either Defendant. To try to meet her burden of demonstrating jurisdiction, she relies exclusively on the Retainer Agreement and her contention that Defendants *could* have determined that she resided in New York. Opp. at

---

[3] Yak also alleges that Defendants are violating the New York Rules of Professional Conduct, but these rules only govern the conduct of attorneys. Opp. at 8-12; N.Y. Rule of Prof'l Conduct 7.1; *see generally*, *Essex Equity Holdings USA LLC v. Lehman Bros. Inc.*, 909 N.Y.S.2d 285, 289-90 (Sup. Ct. N.Y. Cty. 2010) ("The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies."). Yak has not explained why these rules would apply to the non-lawyer Defendants or why Defendants' failure to comply with attorney advertising requirements would be unlawful.

19-23. Neither contention is sufficient to establish specific jurisdiction over Defendants.

*First,* the Retainer Agreement's jurisdictional provision applies *only* to disputes over the Retainer Agreement. Am. Compl. Ex. C at 2; *cf. Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 335 (2d Cir. 2005) (choice of law provisions inapplicable to tort claims where the "right [asserted] does not arise from the contract"). Yak is not alleging any contract-based claims and has not explained why the Retainer Agreement would govern tort claims arising out of events that predated the agreement by more than a year.

*Second*, Yak's conclusory claim that Defendants "took business away from" her is insufficient to convey jurisdiction. She has not identified any specific lost sales or customers in New York. *See* CPLR 302(a)(3)(ii); *Darby Trading Inc. v. Shell Int'l Trading & Shipping Co.*, 568 F. Supp. 2d 329, 336 (S.D.N.Y. 2008). Nor has she plausibly alleged that Defendants could reasonably have expected that the purchase of a Connecticut lease, for use by Connecticut landlords, would have a negative impact on her New York customer base. Yak's new claim that her email signature indicated a New York office, Decl. of Patricia Yak Ex. A, Dkt. 23-1, does not change this, as the parties had reached a deal before communicating by email, Am. Compl. ¶¶ 25-26, and the agreements centered around Connecticut law, not that of New York.

*Third*, Yak has not shown that Defendants are transacting business in New York. *See* CPLR 302(a)(1). Here, too, the only new allegation is that her email signature may have alerted Defendants to her residence, but New York courts are generally "loath to uphold jurisdiction under the 'transaction in New York' prong of CPLR 302 if the contract at issue was negotiated solely by mail, telephone, and fax without any New York presence by the defendant." *Patel v. Patel*, 497 F. Supp. 2d 419, 428 (E.D.N.Y. 2007) (citation omitted); *see also Kulas v. Adachi*, No. 96 Civ. 6674 (MBM), 1997 U.S. Dist. LEXIS 6868 (S.D.N.Y. May 16, 1997) ("[T]he New

York courts that specifically encounter defendants whose sole contact with the state is by way of telephone and mail, refuse to exercise jurisdiction.") (citations omitted).

*Finally*, the Court need not conduct a due process inquiry where the plaintiff has not shown that the New York long-arm statute applies, *Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 75 (2d Cir. 2012), but if it were to reach this federal question, Yak has again failed to carry her burden.  Contrary to Yak's contention, Opp. at 16, Defendants have not purposefully availed themselves of New York law by soliciting "a New York attorney," precisely because there was no plausible reason to suspect Yak resided in New York until after the agreement was reached.  Am. Compl. ¶¶ 25-26; Mem. of Law in Supp. of Defs.' Mot. to Dismiss ("Mem.") at 11, Dkt. 21.  Similarly, for all the reasons stated above in Section I, Defendants have not purposefully availed themselves of New York law by "practicing law without a license" in the state, Opp. at 17, and this argument need not be countenanced by the Court, as it is entirely unsupported by factual allegations, *see In re SSA Bonds Antitrust Litig.*, No. 16 Civ. 3711 (ER), 2019 U.S. Dist. LEXIS 172939, at *25-26 (S.D.N.Y. Sept. 30, 2019) (dismissing complaint where jurisdiction was based on conclusory allegations and failed to meet due process).  Without either a statutory or constitutional basis, the exercise of personal jurisdiction over Defendants would be improper.  *See Licci*, 673 F.3d at 59-60.

### III. YAK HAS FAILED TO STATE ANY VIABLE CLAIM FOR RELIEF

Finally, with respect to the pleaded causes of action, Yak has failed in her Opposition to address any of the deficiencies identified by Defendants, and she has no response to the two overarching problems with her Amended Complaint: (1) that she sold the Lease Packet to Bigger Pockets pursuant to their agreement, which did not limit Defendants' subsequent use of it; and (2) that her messages with Curelop would demonstrate to any reasonable person that he engaged

7

her on behalf of Bigger Pockets. Instead, she tries to sidestep these defects in her pleading by arguing that her claims should survive because Defendants were unlawfully practicing law. She is wrong on the merits of that contention as demonstrated in Section I above, but the contention is in any event irrelevant to whether she has properly alleged the elements of her claims.

More specifically, with respect to Count I, other than again asserting that the Lease Packet took "substantial effort" to prepare, Yak has not demonstrated that the Lease Packet constitutes the sort of "formula, pattern, device or compilation of information which is used in one's business, and which gives the owner an opportunity to obtain an advantage over competitors who do not know or use it" that would qualify as a trade secret. *See Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 117 (2d Cir. 2009). Nor has Yak identified any legal precedent treating attorney work product as a trade secret or rebutted Defendants' argument that selling the Lease Packet to them, without imposing any further limitation on use of the Packet, is dispositive of her contention that it was a trade secret or that Defendants improperly used it. *See Structured Capital Sols., LLC v. Commerzbank AG*, 177 F. Supp. 3d 816, 832 (S.D.N.Y. 2016) ("If an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished") (citation omitted).

Yak also has not identified any conduct by Defendants that could give rise to a fiduciary relationship or constitute fraud that could therefore limit Defendants' use of the Lease Packet and could give rise to an unfair competition claim. *Compare* Opp. at 19, *with L.I. City Ventures v. Urban Compass, Inc.*, No. 18 Civ. 5853 (PGG), 2019 U.S. Dist. LEXIS 7782, at *23-25 (S.D.N.Y. Jan. 16, 2019) (requiring "unauthorized taking and exploitation" of trade secrets or internal company documents to state unfair competition claim).

8

With respect to Count II, Yak has not identified any exception to the rule that the existence of a valid and enforceable contract precludes any claim for unjust enrichment. *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 509 n.10 (2d Cir. 2009); *see also* Mem. at 17-18. Nor has she alleged any unconscionable benefit that would require restitution. She acknowledges that Bigger Pockets paid for the Lease Packet pursuant to the agreement, Opp. at 10, and she does not explain why any allegedly illegal subsequent use of it would require additional compensation.

With respect to Count III, Yak still has not identified any tangible item, belonging to her, over which Defendants took dominion. *See Pappas v. Tzolis*, 20 N.Y.3d 228, 234 (2012) ("Two key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights."). She has abandoned her claim that she was owed royalties for the Lease Packet, and her claim that Defendants later used the Lease Packet unlawfully does not change the fact that she voluntarily sold it to them, pursuant to their contract. *See id.* (dismissing conversion claim where defendant obtained property at issue through purchase agreement with plaintiff).

With respect to Count IV, Yak has abandoned her earlier theory and now alleges that the purportedly false statement at issue is Curelop's assertion that he intended to follow the law. Opp. at 21-23. The quoted passages from their communications, however, are not assurances by Curelop regarding Defendants' business model or commitment to legality, but rather, requests that Yak draft forms "to adhere to Connecticut law." Opp. at 22. Moreover, even if the statements were as Yak contends, they were not false, as re-selling the forms would not constitute the unlicensed practice of law. *See Dacey*, 28 A.D.2d at 171-73. Absent a provably false statement, allegations of reasonable reliance on that statement, or damages resulting from it,

9

Yak's claim for fraud must fail.  *See Banque Arabe Et Internationale D'Investissement v. Md. Nat'l Bank*, 57 F.3d 146, 153 (2d Cir. 1995) (citations omitted).

With respect to Count V, Yak continues to assert that Curelop failed to mention that Bigger Pockets intended to sell the forms, but she still has not alleged any fiduciary or other relationship that would give rise to a duty to disclose.  *Id.* ("To establish fraudulent concealment, a plaintiff must also prove that the defendant had a duty to disclose the material information."). Yak alleges summarily that such a duty may arise where one party has superior knowledge, but here, Curelop's affiliation with Bigger Pockets and Bigger Pockets' business model were available for all to see.  *Id.* at 158 (dismissing concealment claim where plaintiff "could have learned [the information at issue] by inquiry from any of several sources").

Finally, with respect to Count VI, Yak has not distinguished her claim for breach of the duty of good faith from her claim for fraudulent concealment, and it should be dismissed as duplicative.  She also has abandoned her claim that Curelop breached his duty by "withholding critical information," Am. Compl. ¶ 156, and instead quotes Defendants' brief, explaining that the duty includes a pledge not to impede the other from "receiv[ing] the fruits of the contract." As Yak acknowledges that she was paid pursuant to her contract, it remains unclear what she contends constituted a breach of that duty.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Yak's Amended Complaint with prejudice.

Dated: January 24, 2020　　　　　　　　　Respectfully submitted,
New York, NY　　　　　　　　　　　　　　BALLARD SPAHR LLP

　　　　　　　　　　　　　　　　　　　　　 */s/Jay Ward Brown*
　　　　　　　　　　　　　　　　　　　　　Jay Ward Brown
　　　　　　　　　　　　　　　　　　　　　Jacquelyn N. Schell

10

                                  1675 Broadway, 19th Floor
                                  New York, NY 10019-5820
                                  T: (212) 223-0200
                                  F: (212) 223-1942
                                  brownjay@balladspahr.com
                                  schellj@ballardspahr.com