UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PATRICIA YAK,

Plaintiff,

-against-

BIGGERPOCKETS, L.L.C., *et al.*,

Defendants.

**MEMORANDUM OPINION
AND ORDER**

19-CV-05394 (PMH)

PHILIP M. HALPERN, United States District Judge:

Plaintiff Patricia Yak ("Plaintiff") brings this diversity action against BiggerPockets, L.L.C. ("BP") and its employee Craig Curelop ("Curelop" and collectively "Defendants") for: (1) misappropriation of trade secrets; (2) unfair competition; (3) unjust enrichment; (4) conversion; (5) fraud; (6) fraudulent concealment; and (7) breach of the implied covenant of good faith and fair dealing, concerning Defendants' sale of legal forms that Plaintiff prepared for Defendants pursuant to two agreements between the parties.[1] (Doc. 18, "Am. Compl." ¶¶ 87-158).

On December 13, 2019, Defendants moved to dismiss this action in its entirety for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) or, in the alternative, failure to state a claim upon which relief can be granted under Federal Rules of Civil Procedure 12(b)(6) and 9(b). (Doc. 20; Doc. 21, "Def. Br."). Plaintiff filed her opposition to Defendants' motion on January 9, 2020 (Doc. 23, "Opp'n. Br."), and the motion was fully briefed with the filing of Defendants' reply on January 24, 2020 (Doc. 24, "Reply Br."). On April 16, 2020, this matter was reassigned to me.

For the reasons set forth below, Defendants' motion to dismiss is GRANTED.

---

[1] Plaintiff merged her misappropriation and unfair competition claims into a single cause of action. (*See* Am. Compl. ¶¶ 87-100). In New York, they are separate tort causes of action. *Faiveley Transp. USA, Inc. v. Wabtec Corp.*, 758 F. Supp. 2d 211, 222 (S.D.N.Y. 2010).

## BACKGROUND

The facts herein are taken from Plaintiff's Amended Complaint along with the documents annexed thereto (all of which are integral to, or referred to in, the Amended Complaint) and are considered true only for the purpose of resolving the extant motion.[2] The facts are generally undisputed. Plaintiff is a New York resident who is licensed to practice law in Connecticut. (Am. Compl. ¶¶ 2, 13). BP is a Delaware corporation with its principal place of business in Denver and Curelop is a Denver resident. (*Id.* ¶¶ 3-4).[3]

In November 2017, Plaintiff joined Case & Suit, a website which connects individuals seeking legal assistance with "specialized real estate attorneys." (*Id.* ¶ 15 (internal quotation marks omitted)). Shortly after joining the website, the website's "support introduced" her to Curelop, who was seeking "an attorney licensed in Connecticut" to complete a project. (*Id.* ¶¶ 23, 24). Curelop explained the project as follows:

> We are looking to create a package of rock solid landlord forms that are specific to Connecticut. We have some made up from other states so no need to make from scratch. We will send you what we have from other states so you can make any tweaks such that it adheres to Connecticut law. The forms are the following . . . .

(*Id.* ¶ 24; *see also* Case & Suit Msgs. at 3). Plaintiff agreed to complete the project for $975. (Am. Compl. ¶¶ 21, 24). Plaintiff prepared and provided the templates requested ("Lease Packet"), presumably received her payment, and the project ended without incident. (*See id.* ¶¶ 26, 35; Doc.

---

[2] Plaintiff annexed five Exhibits to the Amended Complaint: (1) screenshots of her discussion with Curelop on the website Case & Suit (Doc. 18-1, Am. Compl. Ex. A "Case & Suit Msgs."); (2) a copy of a paid February 2019 invoice (Doc. 18-1, Am. Compl. Ex. B "Invoice"); (3) a copy of an unsigned February 2019 engagement letter ("Engagement Letter") (Doc. 18-1, Am. Compl. Ex. C, "Eng. Ltr."); (4) a copy of the final updated legal forms she prepared (Doc. 18-1, Am. Compl. Ex. D); and (5) a copy of the legal forms Plaintiff's daughter purchased on BP's website (Doc. 18-1, Am. Compl. Ex. E).

[3] Curelop filed a declaration averring that BP "is incorporated under the laws of Colorado," not Delaware. (Doc. 22, Decl. of Craig Curelop ("Curelop Decl.") ¶ 5). Although the Court "may consider materials outside the pleadings" in analyzing a motion to dismiss under Rule 12(b)(2), *Johnson v. UBS AG*, 791 F. App'x 240, 241 (2d Cir. 2019), this state of incorporation discrepancy has no bearing on the analysis herein.

22-1, Curelop Decl. Ex. A, "E-mails" at 5).[4]

Over a year later, in February 2019, Curelop contacted Plaintiff and asked if she would update the Lease Packet to reflect any "changes in Connecticut real estate law." (Am. Compl. ¶ 36). Plaintiff agreed, requested a retainer of $1,400, and prepared a "standard attorney engagement letter." (*Id*. ¶¶ 37-38; *see also* Invoice; Eng. Ltr.). Plaintiff does not allege specifically that the Engagement Letter was executed, but avers that she updated the Lease Packet and that Curelop paid the invoice without incident. (Am. Compl. ¶¶ 39-40).

Shortly thereafter, on or about March 17, 2019, Plaintiff discovered that BP—whose website describes itself as a "Real Estate Investing Social Network" with over 1.3 million members—was selling the Lease Packet she prepared as an "eBook" for $99. (*Id*. ¶¶ 42-43, 45, 47). Plaintiff insists that she never "authorize[d], nor consent[ed] to, the publication, distribution, or sale of her Lease Packet to users, customers, and members of Defendant BP" and complains that she has not derived any benefit from Lease Packet sales. (*Id*. ¶¶ 54, 51, 74). With this information, Plaintiff maintains that she was duped into preparing the Lease Packet and its update, and presses claims against one or both Defendants for: (1) misappropriation of trade secrets; (2) unfair competition; (3) unjust enrichment; (4) conversion; (5) fraud; (6) fraudulent concealment;

---

[4] Although the e-mails annexed to the Curelop Declaration were not attached to the Amended Complaint, "the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, [as well as] documents 'integral' to the complaint and relied upon in it." *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014); *Manley v. Utzinger*, No. 10-CV-2210, 2011 WL 2947008, at *1 n.1 (S.D.N.Y. July 21, 2011) ("The Court may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which the plaintiff relied in bringing the suit."). The parties' correspondence, which was submitted by Defendants in support of their motion to dismiss the Amended Complaint, was referenced by Plaintiff in the Amended Complaint (*see* Am. Compl. ¶¶ 23-25 (citing e-mail exchanges)) *and* relied upon in her opposition brief (*see* Opp'n. Br. at 21-22 (relying on e-mails attached to Curelop Declaration to oppose dismissal of fraud claim)). Accordingly, the Court considers the e-mails annexed to the Curelop Declaration on the present motion. Similarly, as the parties' correspondence was referenced by Plaintiff in the Amended Complaint (*see* Am. Compl. ¶¶ 23-25 (citing e-mail exchanges)), the Court considers the two additional e-mails Plaintiff filed in opposition to the motion to dismiss (*see* Doc. 23-1, Yak Decl. Ex. A).

and (7) breach of the implied covenant of good faith and fair dealing, all stemming from Defendants' sale of the Lease Packet she prepared. (*Id*. ¶¶ 93-97, 107-09, 116-19, 126, 129-32, 141, 143-47, 156).

### STANDARD OF REVIEW

A.  <u>Standard of Review Under Rule 12(b)(2)</u>

A party may move to dismiss an action for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). Although it is a plaintiff's burden to establish jurisdiction in response to such a motion, "the showing a plaintiff must make to defeat a defendant's claim that the court lacks personal jurisdiction over it varies depending on the procedural posture of the litigation." *Dorchester Fin. Secs., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (internal quotation makes omitted). At this stage, "[i]n order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a *prima facie* showing that jurisdiction exists." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013) (internal quotation marks omitted, italics added). "Such a showing entails making legally sufficient allegations of jurisdiction, including an averment of facts that, if credited[,] would suffice to establish jurisdiction over the defendant." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 35 (2d Cir. 2010) (alteration in original, internal quotation marks omitted). The Court "may consider materials outside the pleadings" in analyzing a motion to dismiss under Rule 12(b)(2), *Johnson*, 791 F. App'x at 241; and "[t]he allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (citation omitted). While the Court "construe[s] the pleadings and any supporting materials in the light most favorable to the plaintiff[]," *Licci*, 732 F.3d at 167, and must "resolv[e] all doubts in" a plaintiff's favor, her "*prima facie* showing must be factually supported." *NuMSP, LLC v. St. Etienne*, --- F.

Supp. 3d ---, 2020 WL 2614770, at *5 (S.D.N.Y. May 22, 2020) (internal quotation marks omitted, italics added).

Assessing whether Defendants are subject to specific long-arm personal jurisdiction[5]—that is, jurisdiction based upon their contacts with the state—is a two-step process. First, the Court must determine whether personal jurisdiction exists under New York's long-arm statute, C.P.L.R. § 302. *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015). Second, if New York's particular requirements are satisfied, the Court "analyze[s] whether personal jurisdiction comports with due process protections established under the Constitution." *Id.* Where, however, the dispute is governed by "a valid and enforceable forum selection clause," and the claim is included, and not excluded by the language of the forum selection clause, the Court need not conduct a personal jurisdiction analysis because the clause constitutes "consent to personal jurisdiction." *NuMSP, LLC*, 2020 WL 2614770, at *6 (internal quotation marks omitted).

B.  <u>Standard of Review Under Rule 12(b)(6)</u>

A Rule 12(b)(6) motion enables a court to consider dismissing a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility

---

[5] General personal jurisdiction, in contrast, is when an entity's contacts with the forum are "so continuous and systematic as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (alteration in original, internal quotation marks omitted). This type of jurisdiction is typically limited to those states where a defendant has "its formal place of incorporation or principal place of business . . . ." *Id.* at 139 n.19. Plaintiff concedes that Defendants are not subject to general personal jurisdiction. (Opp'n. Br. at 13).

standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *See Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). However, the presumption of truth does not extend to "legal conclusions, and [t]hreadbare recitals of the elements of the cause of action." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

Beyond these fundamental requirements, the Federal Rules of Civil Procedure provide a heightened standard for specificity when pleading claims sounding in fraud. Specifically, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "This means the who, what, when, where, and how: the first paragraph of any newspaper story." *Backus v. U3 Advisors, Inc.*, No. 16-CV-8990, 2017 WL 3600430, at *9 (S.D.N.Y. Aug. 18, 2017) (quoting *Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.*, 39 F. Supp. 3d 516, 520 (S.D.N.Y. 2014)).

## ANALYSIS

A. Personal Jurisdiction Over Curelop Pursuant to N.Y. C.P.L.R. § 302(a)(1)

Plaintiff first claims that the Court has personal jurisdiction over Curelop "pursuant to C.P.L.R. § 302(a)(1) because he transacted business within New York State when he made the initial contract for services via Case & Suit." (Am. Compl. ¶ 6). Plaintiff's allegations simply do

not establish a *prima facie* showing of jurisdiction under this provision because that single

transaction does not constitute the transaction of business in New York under New York law.[6]

N.Y. C.P.L.R. § 302(a)(1) provides:

> (a) Acts which are the basis of jurisdiction. As to a cause of action
> arising from any of the acts enumerated in this section, a court may
> exercise personal jurisdiction over any non-domiciliary, or his
> executor or administrator, who in person or through an agent:
>
> 1. transacts any business within the state or contracts anywhere to
> supply goods or services in the state[.]

When applying this provision, the Second Circuit has explained that courts must examine whether

Plaintiff has pled that Curelop "(1) . . . transact[ed] any business in New York and, if so, (2)

whether the cause of action aris[es] from such a business transaction." *Licci*, 673 F.3d at 60 (third

alteration in original, internal quotation marks omitted). To guide the analysis as to the first prong,

the Second Circuit has "identified four non-exclusive factors" for courts to assess:

> (i) whether the defendant has an ongoing contractual relationship
> with a New York corporation; (ii) whether the contract was
> negotiated or executed in New York and whether, after executing a
> contract with a New York business, the defendant has visited New
> York for the purpose of meeting with parties to the contract
> regarding the relationship; (iii) what the choice-of-law clause is in
> any such contract; and (iv) whether the contract requires [parties to
> that contract] to send notices and payments into the forum state or
> subjects them to supervision by the corporation in the forum state.

---

[6] Plaintiff expands the argument for jurisdiction under N.Y. C.P.L.R. § 302 in her opposition to the motion to dismiss and offers a conclusory claim that jurisdiction is proper over BP because it "has a website where its customers and members can purchase New York-specific landlord forms" which are "use[d] in the New York real estate market." (Opp'n. Br. at 14). The Court disregards this argument, as a party may not amend her pleading by presenting new theories in briefs. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (rejecting plaintiff' argument regarding a duty that was claimed "for the first time in . . . opposition to the motion to dismiss"). However, even if the Court accepted this belated argument and concluded that jurisdiction was proper under N.Y. C.P.L.R. § 302(a)(1), the action would nevertheless be dismissed for failure to state a claim under Rule 12(b)(6). *See* discussion *infra*. In any event, maintenance of a website where New York forms are available for sale, alone, is not a sufficient basis to assert long-arm jurisdiction. *See ISI Brands, Inc. v. KCC Int'l, Inc.*, 458 F. Supp. 2d 81, 87-88 (E.D.N.Y. 2006).

*Rosenblatt v. Coutts & Co. AG*, 750 F. App'x 7, 10 (2d Cir. 2018) (quoting *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004) (alterations in original)).

Although the Court is guided by the four factors above, "the overriding criterion" for the first step of N.Y. C.P.L.R. § 302(a)(1) analysis "is whether the entity purposefully avails itself of the privilege of conducting activities within New York." *Id*. at 9-10 (internal quotation marks omitted). The answer to this question is necessarily fact-dependent and the Court must consider "the totality of the circumstances . . . in determining whether a defendant has 'invoke[ed] the benefits and protections of [New York's] laws.'" *Id*. (quoting *Licci*, 673 F.3d at 61-62 (first alteration added)). While a single claimed act may suffice, *Licci*, 673 F.3d at 62, it is the quality, not the quantity, of Defendants' contacts with the forum that guides the Court's analysis. *Rosenblatt*, 750 F. App'x at 10; *see also, e.g.*, *Lawrence Wisser & Co., Inc. v. Slender You, Inc.*, 695 F. Supp. 1560, 1562 (S.D.N.Y. 1988) (dismissing complaint under Rule 12(b)(2) and concluding, *inter alia*, that alleging "approximately 80 telephone calls and 30 faxes" was insufficient to constitute "transacting business" under N.Y. C.P.L.R. § 302(a)(1)).

Looking to the factors outlined by the Second Circuit, Plaintiff has not pled facts establishing that Curelop "purposefully avail[ed] [him]self of the privilege of conducting activities within New York." *Rosenblatt*, 750 F. App'x at 9-10. The single, completed agreement from 2017 does not constitute an "ongoing contractual relationship." *See Capstone Bus. Funding, LLC v. Denark Constr., Inc.*, No. 16-CV-2141, 2017 WL 398411, at *3 (S.D.N.Y. Jan. 30, 2017) (concluding that the plaintiff failed to plead such a relationship and explaining that even two separate "short-term contracts . . . do not establish an ongoing contractual relationship"). As to the negotiation and execution, "Plaintiff has set forth no claim that a written contract was in fact negotiated or executed," *C.B.C. Wood Prods., Inc. v. LMD Integrated Logistics Servs., Inc.*, 455

8

F. Supp. 2d 218, 225 (E.D.N.Y. 2006), does not claim that Curelop "ever travel[ed] to the state of New York," *Wickers Sportswear, Inc. v. Gentry Mills, Inc.*, 411 F. Supp. 2d 202, 209 (E.D.N.Y. 2006), and suggests the entire interaction happened over the internet. (Am. Compl. ¶¶ 13-27; *see also* Case & Suit Msgs.; E-mails). Third, "Plaintiff does not claim that the alleged agreement contained any choice of law provision or that the parties ever discussed choice of law." *C.B.C. Wood Prods., Inc.*, 455 F. Supp. 2d at 226. Fourth, while Plaintiff does not allege the fact, the Court assumes that the $975 payment was sent to, and received by her in, New York.[7]

The totality of the circumstances underscores the conclusion that Plaintiff has not pled a *prima facie* showing that Curelop transacted business in New York. Plaintiff joined Case & Suit to provide services as an attorney (Am. Compl. ¶¶ 13-15), Curelop sought her assistance because she was licensed to practice law in Connecticut (*id*. ¶¶ 16-17), the parties were connected by agents of the website (*id*. ¶¶ 23-24), Plaintiff prepared the Lease Packet in accordance with Connecticut law (*id*. ¶¶ 24, 26; E-mails), and Plaintiff presumably received her fee (*id*. ¶¶ 26, 35, 37; E-mails at 5-6). When the facts are viewed holistically alongside the four factors outlined by the Second Circuit, Plaintiff has not made a *prima facie* showing that Curelop "transact[ed] any business" in New York such that he projected himself into, or purposefully availed himself of the benefits and responsibilities of transacting business in, New York.

B.  Personal Jurisdiction Over Defendants Pursuant to N.Y. C.P.L.R. § 302(a)(3)(ii)

Plaintiff's second theory of personal jurisdiction under New York's long-arm statute posits, in pertinent part, that "[t]his Court has personal jurisdiction over both Defendant Curelop and

_____

[7] Plaintiff argues that jurisdiction over Curelop is proper because he knew Plaintiff had an office in New York. (Opp'n. Br. at 15). Curelop's knowledge on this issue is irrelevant, as the "mere knowledge that a plaintiff resides in a specific jurisdiction," without more, does not subject him to specific personal jurisdiction in New York. *Rosenblatt v. Coutts & Co. AG*, No. 17-CV-3528, 2017 WL 3493245, at *4 (S.D.N.Y. Aug. 14, 2017) (internal quotation marks omitted).

Defendant BiggerPockets pursuant to C.P.L.R. § 302(a)(3)(ii) because both Defendants committed a tortious act within the state . . . ." (Am. Compl. ¶ 8). The underlying tortious act, as Plaintiff explains in her opposition brief, is Defendants' "engage[ment] in a widespread fraudulent scheme whereby they practice law without a license in all 50 states" by selling templates like the Lease Packet (Opp'n. Br. at 15). Here too, Plaintiff fails to make a *prima facie* showing of jurisdiction.

New York State recognizes jurisdiction over an out-of-state defendant when that entity "commits a tortious act without the state causing injury to person or property within the state . . . if [it] . . . expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce" and the "cause of action aris[es] from" that act. N.Y. C.P.L.R. § 302(a)(3)(ii). A *prima facie* showing of jurisdiction under this provision requires pleading that:

> (1) the defendant's tortious act was committed outside New York, (2) the cause of action arose from that act, (3) the tortious act caused an injury to a person or property in New York, (4) the defendant expected or should reasonably have expected that his or her action would have consequences in New York, and (5) the defendant derives substantial revenue from interstate or international commerce.

*Penguin Grp. (USA) Inc.*, 640 F.3d at 499 (citation omitted).

Even if the Court assumes that Plaintiff met the fifth factor and pled facts sufficient to show that Defendants "derive[] substantial revenue from interstate or international commerce," (*see* Am. Compl. ¶¶ 42-46), she has not pled facts satisfying the other four factors. First, Plaintiff has not explained how selling legal forms constitutes a tortious act in and of itself. Forms like the Lease Packet have been available to the public "at least as far back as the 1700s" and "[m]any court systems and governmental agencies make legal forms available to the public." Ronald C. Minkoff, *New York Takes the Lead on Online Document Providers*, N.Y. St. B.J., Sept./Oct. 2019,

at 18, 19; *see also New York Cty. Lawyers' Assoc. v. Dacey*, 234 N.E.2d 459, 459 (N.Y. 1967) (noting that "the publication of a multitude of forms for all manner of legal situations is a commonplace activity"); *State v. Winder*, 348 N.Y.S.2d 270 (App. Div. 1973). Having failed to identify a tortious act, Plaintiff *ipso facto* cannot present an injury arising from that act. Third, even if Plaintiff met the first two elements, pleading "injury in New York" as a result of lost business (Am. Compl. ¶ 96) requires that Plaintiff allege that she lost sales "in the New York market" to "New York customers," *Darby Trading Inc. v. Shell Int'l. Trading & Shipping Co. Ltd.*, 568 F. Supp. 2d 329, 336 (S.D.N.Y. 2008). Plaintiff makes no such claim here. Finally, Plaintiff does not explain why Defendants should have "reasonably expected" that the sale of the Lease Packet—forms concerning real property transactions in *Connecticut*—would cause harm in New York. In sum, Plaintiff has not pled facts suggesting *prima facie* personal jurisdiction over Defendants pursuant to N.Y. C.P.L.R. § 302(a)(3)(ii).

C.  <u>Personal Jurisdiction Over BP Pursuant to the Engagement Letter</u>

Plaintiff's final bid for securing personal jurisdiction is predicated on the claim that BP specifically consented to this Court's personal jurisdiction by operation of the unsigned Engagement Letter's forum selection clause. (Am. Compl. ¶ 7). Here again, Plaintiff fails to plead *prima facie* jurisdiction.

"Forum selection clauses are enforced only when they encompass the claim at issue." *Light v. Taylor*, 317 F. App'x 82, 83 (2d Cir. 2009). Under New York law, "[t]he applicability of a forum selection clause does not depend on the nature of the underlying action." *Couvertier v. Concourse Rehab. & Nursing, Inc.*, 985 N.Y.S.2d 683, 684 (App. Div. 2014). "Rather, it is the language of the forum selection clause itself that determines which claims fall within its scope." *Id.*; *compare First Ins. Funding Corp. v. Kass*, 920 N.Y.S.2d 311, 312-13 (App. Div. 2011) ("to matters

involving validity and construction" inapplicable to tort claims), *with Couvertier*, 985 N.Y.S.2d at 684 ("[a]ny and all actions arising out of or related to this Agreement" encompassed tort claims (alteration in original)). Here, the operative language in the unsigned Engagement Letter states:

> This Agreement shall be governed by and construed in accordance with the laws of the State of New York. You hereby agree to the jurisdiction of the courts sitting in Westchester County, New York and waive any claim of inconvenient forum.

(Eng. Ltr. at 2). This language "falls somewhere between" clearly broad or narrow clauses, leaving the Court to determine "whether the plaintiff's claims depend on rights and duties that must be analyzed by reference to the contractual relationship." *Direct Mail Prod. Servs. Ltd. v. MBNA Corp.*, No. 99-CV-10550, 2000 WL 1277597, at *6 (S.D.N.Y. Sept. 7, 2000) (interpreting similar forum selection clause); *see also Brennan v. Phyto-Riker Pharm., Ltd.*, No. 01-CV-11815, 2002 WL 1349742, at *4 (S.D.N.Y. June 20, 2002). Assuming that the Court could reach the issue of contract interpretation, this language does not encompass Plaintiff's claims.[8]

While Plaintiff tries to wedge the Engagement Letter into the discussion, she pleads affirmatively that the parties' business concluded successfully without incident (Am. Compl. ¶¶ 36-41), "[n]othing in the attorney engagement letter authorized the sale" of the Lease Packets (*id.* ¶ 63), and that the parties never addressed the issue of reselling the templates (*id.* ¶¶ 49, 60, 64, 71, 73-74, 77). The allegations reveal that the true impetus for Plaintiff's claims is her belief that Defendants' sale of the Lease Packets entitles her "to restitution and royalties." (*Id.* ¶ 78; *see also*

---

[8] The Engagement Letter was not executed by BP and Plaintiff does not claim otherwise. (*See* Eng. Ltr.; *see also generally* Am. Compl.). Just above the signature lines, the Engagement letter provides, "By signing this Agreement, you confirm that you have read this Agreement, understand its provisions, and agree to abide by it." (Eng. Ltr. at 2). This language, coupled with the failure to allege that BP agreed to the Engagement Letter's terms, presents a question as to whether BP agreed to be bound by the forum selection clause. *See Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 322 (2d Cir. 1997) (noting that while parties may bind themselves orally in New York, "if the parties intend not to be bound until the agreement is set forth in writing and signed, they will not be bound until then").

*id*. ¶¶ 76-77). Plaintiff's arguments in opposition to dismissal underscore the conclusion that her claims do not concern the Engagement Letter's terms, but rather Defendants' violation of an independent, standalone tort duty to "follow the law" and *not* practice law without a license by selling the Lease Packet. (*See* Opp'n. Br. at 18-25). Plaintiff is "not suing for breach of the [Engagement Letter], alleging any lack of performance required by the [Engagement Letter], or disputing either party's rights or obligations under the" Engagement Letter. *Armco Inc. v. N. Atl. Ins. Co. Ltd.*, 68 F. Supp. 2d 330, 338 (S.D.N.Y. 1999). Instead, she seeks to establish an after-the-fact tort-based entitlement to more money than she received under the agreement. Simply put, the unsigned Engagement Letter's language does not include tort claims unrelated to the completed contract housing the personal jurisdiction language.

### D. Failure to State a Claim Pursuant to Rule 12(b)(6)

Alternatively, and assuming *arguendo*, that Plaintiff pled facts presenting a *prima facie* showing of jurisdiction and withstood the Rule 12(b)(2) motion, the claims for relief are nevertheless dismissed for failure to state a claim upon which relief can be granted.[9] In fact, while Plaintiff has not sought leave to file a second amended complaint, the facts alleged would render amendment futile; "the whole story is there, but it simply does not amount to an actionable claim."[10] *See Uddoh v. United Healthcare*, 254 F. Supp. 3d 424, 433-434 (E.D.N.Y. 2017) (denying leave to amend *sua sponte*).

---

[9] As fundamental pleading deficiencies identified require dismissal under Rule 12(b)(6), the Court does not reach the issue of whether those claims governed by Rule 9(b) provide the requisite particularity.

[10] The Court notes that no party performed a choice-of-law analysis and that their arguments are confined to New York law. (*See generally* Def. Br.; Opp'n. Br.; Reply Br.). Without concluding that New York law would govern these tort claims (because the choice of law provision *includes* New York's choice of law principles), as the parties assume New York law applies, the Court will do so as well.

a. <u>Misappropriation of Trade Secrets Against Both Defendants</u>

Plaintiff's misappropriation of trade secrets claim proceeds on the theory that the Lease Packet constitutes a "trade secret" under New York law. (*See* Am. Compl. ¶¶ 87-100; Opp'n. Br. at 18). To state this claim, Plaintiff must allege "(1) that [she] possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, as a result of discovery by improper means." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 117 (2d Cir. 2009) (quoting *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 43-44 (2d Cir. 1999)). This claim cannot survive under any permutation because Plaintiff has pled facts and made arguments contradicting the very idea that the Lease Packets were "trade secrets."

Under New York law, "[a] trade secret is any formula, pattern, device or compilation of information which is used in one's business, and which gives the owner an opportunity to obtain an advantage over competitors who do not know or use it." *Id.* (internal quotation marks omitted). Courts consider six separate factors to determine whether information qualifies as a trade secret, *id.*, but the most "critical" of them is "the extent of measures taken by the business to guard the secrecy of the information" from others. *Pauwels v. Deloitte LLP*, No. 19-CV-2313, 2020 WL 818742, at *5 (S.D.N.Y. Feb. 19, 2020) (internal quotation marks omitted). This means that in order "to successfully plead possession of a trade secret, Plaintiff must show that [she] took substantial measures to protect the secret nature of" the Lease Packet. *Id.* (internal quotation marks omitted). Plaintiff establishes just the opposite here. Plaintiff sold the Lease Packet to Defendants (*e.g.*, Am. Compl. ¶¶ 11, 20-26, 35-40, 57), claims the topic of Defendants' resale was never broached (*e.g.*, *id.* ¶¶ 34, 54, 60-61, 63-64, 73-74, 94-95), and argues affirmatively that expecting her "to take adequate protections to prevent . . . Defendants from reselling her work" is "ludicrous" (Opp'n. Br. at 19).

Plaintiff pled facts showing that she "freely disclos[ed] the very trade secret for which [s]he now seeks protection" and "does not even allege that [s]he ever sought to establish any particular limitation" on access to the Lease Packet before this action. *Pauwels*, 2020 WL 818742, at *5-6. Where, as here, "an individual discloses [her] trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, [her] property right is extinguished." *Structured Capital Sols., LLC v. Commerzbank AG*, 177 F. Supp. 3d 816, 832 (S.D.N.Y. 2016) (quoting *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984)); *see also Syndicated Commc'n Venture Partners IV, LP v. BayStar Capital, L.P.*, 859 N.Y.S.2d 125, 127 (App. Div. 2008) (concluding that plaintiff had not proven misappropriation of trade secrets "inasmuch as the assets that could be considered trade secrets . . . were acquired at public auction for which plaintiff had notice . . . ."). Accordingly, this claim is dismissed.

   b.  Unfair Competition Against Both Defendants

With respect to Plaintiff's second claim, "New York recognizes two species of common-law unfair competition: 'palming off' (also called 'passing off') and misappropriation." *Small Bus. Bodyguard Inc. v. House of Moxie, Inc.*, 230 F. Supp. 3d 290, 307 (S.D.N.Y. 2017). Plaintiff's theory of unfair competition is misappropriation. (Opp'n. Br. at 19 (arguing that Plaintiff stated a misappropriation unfair competition claim)). A misappropriation unfair competition claim arises when "the defendant misappropriated the fruit of plaintiff's labors and expenditures by obtaining access to plaintiff's business idea through either fraud or deception, or an abuse of a fiduciary or confidential relationship." *House of Moxie, Inc.*, 230 F. Supp. 3d at 307 (internal quotation marks omitted). However, while the Court—and the parties in their briefs—address these separate torts separately, Plaintiff pled the misappropriation of trade secrets and unfair competition claims together on the same facts. (*See* Am. Compl. ¶¶ 87-100). Where, as here, "these two types of claims

are duplicative of each other, courts generally consider them to be a single cause of action." *Mastercraft Decorators, Inc. v. Orlando*, 356 F. Supp. 3d 259, 269 n.5 (W.D.N.Y. 2018) (quoting *Friedman v. Wahrsager*, 848 F. Supp. 2d 278, 300 (E.D.N.Y. 2012)); *see also Ferring B.V. v. Allergan, Inc.*, 4 F. Supp. 3d 612, 629 (S.D.N.Y. 2014) ("An unfair competition claim can only survive dismissal of a duplicative misappropriation claim if the two rest on different factual predicates."). Accordingly, because the misappropriation of trade secrets claim is dismissed, this claim for unfair competition based upon the same facts, is dismissed as well.

<ol type="c" start="3">
<li>Unjust Enrichment Against BP</li>
</ol>

To present a viable claim for unjust enrichment, the third claim, under New York law, Plaintiff must plead: "1) that the defendant benefitted; 2) at plaintiff's expense, and 3) that equity and good conscience require restitution." *Kramer v. Lockwood Pension Servs., Inc.*, 653 F. Supp. 2d 354, 381 (S.D.N.Y. 2009) (internal quotation marks omitted). However, this quasi-contract claim exists only in the absence of "a valid and enforceable contract." *Id*. at 382. Here, Plaintiff complains that while she entered into the agreements with Defendants and the parties performed as agreed, "Defendants utilized . . . [the] Lease Packets and provided them to members of . . . BP." (Am. Compl. ¶ 106). Plaintiff pled the existence of contracts that compensated her for preparing and updating the Lease Packet. The fact that agreements existed prevents Plaintiff from pleading facts suggesting that "equity good conscience" require Plaintiff be paid. Defendants "followed through on their end of the agreed-upon bargain" and the transactions were terminated. *Tasini v. AOL, Inc.*, 851 F. Supp. 2d 734, 741 (S.D.N.Y. 2012). The fact that Defendants went on to benefit from their agreements with Plaintiff "does not give the plaintiff[] a right to change retroactively their clear, up-front agreement. That is an effort to change the rules of the game after the game has

been played, and equity and good conscience require no such result." *Id*. The claim for unjust enrichment is dismissed.

    d.  Conversion Against BP

    As for conversion, Plaintiff would have to allege "(1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." *Pappas v. Tzolis*, 982 N.E.2d 576, 580 (N.Y. 2012) (internal quotation marks omitted). The facts alleged do not support this claim. Plaintiff claims that she had "a possessory right and interest in the *idea* for the Lease Packets that she provided to Defendant Curelop." (Am. Compl. ¶ 115 (emphasis added)). Ignoring Plaintiff's contradictory allegations that Defendants provided her with sample forms to use and that it was Defendants' idea, she prepared and provided the Lease Packet to Defendants under contract without limitation. (*Id*. ¶¶ 11, 17, 23-24, 26 34-40, 54, 57, 60-61, 63-64, 73-74, 94-95; *see generally* E-mails). First, "[t]here is no protected interest in an idea, but only in the tangible expression or implementation of that idea. It thus cannot be the subject of conversion." *Matzan v. Eastman Kodak Co.*, 521 N.Y.S.2d 917, 918 (App. Div. 1987). Second, even if Plaintiff focused on the Lease Packets themselves—instead of the concept—she sold them to Defendants without reservation. Under such facts, "there could be no interference with [her] property rights." *Pappas*, 982 N.E.2d at 580 (dismissing claim and noting that defendant "had purchased plaintiffs' interests" in the company); *see also Nissan Motor Acceptance Corp. v. Scialpi*, 944 N.Y.S.2d 160, 162 (App. Div. 2012) (affirming summary judgment on claim where defendant "purchased the vehicles at issue . . . as a buyer in the ordinary course of business"); *Shyne v. L.R. Mack, Inc.*, 193 N.Y.S. 70, 71 (App. Div. 1922) (consent to a taking defeats a claim for conversion). Consequently, this claim is dismissed.

e.   Fraud Against Both Defendants

There are two types of claims for fraud in New York: "[f]raud by affirmative misrepresentation, or actual fraud, and fraud by omissions, or fraudulent concealment . . . ." *Wiedis v. Dreambuilder Invs., LLC*, 268 F. Supp. 3d 457, 466 n.3 (S.D.N.Y. 2017) (first alteration in original, internal quotation marks omitted). For the former, a plaintiff must allege: "(1) a material misrepresentation . . . of fact[;] (2) made by defendant with knowledge of its falsity[;] (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." *Tuosto v. Philip Morris USA Inc.*, 672 F. Supp. 2d 350, 359 (S.D.N.Y. 2009) (quoting *Crigger v. Fahnestock & Co., Inc.*, 443 F.3d 230, 235 (2d Cir. 2006)). Assuming that Plaintiff pled facts sufficient under Rule 9(b), this claim would be dismissed because she proceeds not on a theory of affirmative fraud but rather fraud based upon *omission*. (Am. Compl. ¶¶ 126, 134). As Plaintiff fails to identify a misrepresentation, she must proceed instead under a theory of fraudulent concealment. *See Newbro v. Freed*, 409 F. Supp. 2d 386, 400 (S.D.N.Y. 2006) (when "no affirmative misrepresentation is alleged, it is incumbent upon the party charging fraud to establish that there was a duty to disclose the omitted fact"). As such, this claim is dismissed.[11]

f.   Fraudulent Concealment Against Both Defendants

A claim for fraudulent concealment mirrors generally the elements of a claim for fraud. A plaintiff must plead: "(1) a material . . . omission of fact[;] (2) made by defendant with knowledge of it falsity[;] (3) with intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." *Tuosto*, 672 F. Supp. 2d at 362 (S.D.N.Y. 2009) (citation

---

[11] Plaintiff claims in her brief that the misrepresentations were statements by Curelop in which he said "he wanted to adhere to Connecticut law." (Opp'n. Br. 22 (internal quotation marks omitted)). While the Court need not address this new theory of fraud alleged for the first time in Plaintiff's brief in opposition, *Wright*, 152 F.3d at 178, context reveals these quotes referenced the Lease Packet's compliance with Connecticut law. (*Compare* Opp'n. Br. at 21-22, *with* E-mails).

omitted). "A plaintiff must also allege that defendant had a duty to disclose material information." *Id*. (internal quotation marks omitted). Plaintiff claims that Defendants' duty to disclose their intent for the Lease Packets exists because they "had superior knowledge" of their intent to sell templates (Am. Compl. ¶ 150) and "break the law" (Opp'n. Br. at 23). The facts pled defeat the claim that such a duty existed.

To plead the existence of a duty based on "superior knowledge," Plaintiff must allege facts showing that: (1) Defendants had "superior knowledge of certain information;" (2) which was "not readily available to" Plaintiff; and (3) Defendants knew Plaintiff "act[ed] on the basis of mistaken knowledge." *Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 155 (2d Cir. 1995). Once again, even if the Court assumed that Plaintiff pled sufficiently all other elements of her fraudulent concealment claim, Plaintiff—herself an attorney—was "expected to exercise ordinary diligence" and cannot claim reliance on an omission when she "ha[d] means available to [her] of knowing, by the exercise of ordinary intelligence, the truth or the real quality of the subject . . . ." *Pacella v. RSA Consultants, Inc.*, 83 N.Y.S.3d 630, 634 (App. Div. 2018) (internal quotation marks omitted). Plaintiff's allegations show that the information omitted—that Defendants intended to resell the Lease Packets—was readily accessible to Plaintiff, if she cared to pursue it: she pleads that BP maintains a website by which it sells real estate templates (Am. Compl. ¶ 43), that Curelop explained to her, "*We* are looking to create a package of rock solid landlord forms . . . . *We* have some made up *for other states* . . . ." (*id*. ¶ 24 (emphasis added)), and cites (without objection) contemporary correspondence provided by Defendants that reveals Curelop's e-mail address and signature referred to BP (Opp'n. Br. at 21-22; *see generally* E-mails). Plaintiff "could have ascertained the true nature" of Defendants' business model "through the exercise of reasonable diligence." *Austin v. Albany Law Sch. of Union Univ.*, 957 N.Y.S.2d 833,

844 (Sup. Ct. 2013) (dismissing the fraud claim and explaining that the plaintiff applicants pled they had access to third-party data). This requires that her claim for fraudulent concealment be dismissed.

   g.   Good Faith and Fair Dealing Against Curelop

   "Implicit in all contracts is a covenant of good faith and fair dealing in the course of contract performance." *Schiff v. ZM Equity Partners, LLC*, No. 19-CV-4735, 2020 WL 5077712, at *7 (S.D.N.Y. Aug. 27, 2020) (quoting *Dalton v. Educ. Testing Serv.*, 663 N.E.2d 289, 291 (N.Y. 1995)). "This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 861 F. Supp. 2d 344, 364 (S.D.N.Y. 2012) (quoting *Fishoff v. Coty Inc.*, 634 F.3d 647, 653 (2d Cir. 2011)). To this end, "the implied covenant of good faith and fair dealing is not designed to enlarge or create new substantive rights between the parties." *Ferguson v. Lion Holding, Inc.*, 478 F. Supp. 2d 455, 479 (S.D.N.Y. 2007). Accordingly, as the covenant "can only impose an obligation consistent with other mutually agreed upon terms in the contract," a claim must identify an implied promise that "protects either the contract's central purpose or a party's right under a specific contractual provision." *Schiff*, 2020 WL 5077712, at *7 (internal citations quotation marks omitted). "[T]he implied covenant does not extend so far as to undermine a party's general right to act on its own interests in a way that may incidentally lessen the other party's anticipated fruits from the contract." *M/A-COM Sec. Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990) (internal quotation marks omitted).

   Here, Plaintiff identifies neither a contract provision nor explains how the claim protects the contracts' "central purpose;" rather, she complains that Curelop violated the implied covenant by "engaging in conduct detrimental" to her and reselling the Lease Packets. (Am. Compl. ¶¶ 155-

56). At its core, this claim does not seek to protect any agreement's purpose, but improperly "seem[s] to be attempting to create new contractual rights that [the parties] did not previously bargain for . . . ." *Thompson v. Combined Sys., Inc.*, No. 17-CV-6007, 2017 WL 2546611, at \*6 (W.D.N.Y. June 13, 2017) (quoting *Ferguson*, 478 F. Supp. 2d at 479). The claim is dismissed.

<u>**CONCLUSION**</u>

Based upon the foregoing, Defendants' motion to dismiss the Amended Complaint is GRANTED. The Clerk of the Court is respectfully directed to terminate the pending motion sequence (Doc. 20) and close this case.

**SO ORDERED:**

Dated:   New York, New York
           September 10, 2020

_____
PHILIP M. HALPERN
United States District Judge